IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YOLANDA GASTON<br>7319 Sycamore Avenue<br>Elkins Park, PA 19027 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff,<br>v. | : <br> : <br> : <br> : | CASE NO.:_____ |
| INNOVAGE PENNSYLVANIA LIFE, LLC:<br>d/b/a InnovAge Pennsylvania Life<br>6950 Germantown Avenue<br>Philadelphia, PA 19119<br>       and<br>GERMANTOWN AND TOTAL<br>COMMUNITY OPTIONS, INC.<br>d/b/a InnovAge<br>8950 E. Lowry Boulevard<br>Denver, CO 80230 | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **JURY TRIAL DEMANDED** |
| Defendants. | : <br> : | |

CIVIL ACTION COMPLAINT

Yolanda Gaston  (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and

through her undersigned counsel, hereby avers as follows:

INTRODUCTION

1.      Plaintiff has initiated this action to redress violations by InnovAge Pennsylvania

Life, LLC, d/b/a InnovAge Pennsylvania Life - Germantown and Total Community Options,

Inc., d/b/a InnovAge (hereinafter collectively referred to as "Defendants") of the Americans with

Disabilities Act, as amended ("ADA" - 42 USC §§ 12101, *et. seq*.), the Family and Medical

Leave Act ("FMLA" - 29 U.S.C. §2601 *et. seq*.), Pennsylvania common law, the Pennsylvania

Human Relations Act ("PHRA") and the Philadelphia Fair Practice Ordinance ("PFPO").[1] As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state and city-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly assert personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the Eastern District of Pennsylvania.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

---

[1] Plaintiff intends to amend the instant lawsuit to include claims under the PHRA and the PFPO once her administrative remedies are fully exhausted with the respective agencies.

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant InnovAge Pennsylvania Life, LLC, d/b/a InnovAge Pennsylvania Life - Germantown (hereinafter, "IAPL") operates an adult day care center in the above captioned address in Philadelphia, Pennsylvania where Plaintiff physically worked.

9.      Defendant Total Community Options, Inc., d/b/a InnovAge actively manages IAPL and was identified as Plaintiff's employer in a proposed severance agreement (which Plaintiff did not execute) as discussed *infra*.

10.      Upon information and belief, the above entities were run as a joint operation and enterprise with employees moving from one entity to another, sharing facilities, with operations being conducted as if a single enterprise.  Because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of the instant action.

11.      At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

**FACTUAL BACKGROUND**

12.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13.    Plaintiff was hired by Defendants effective on or about March 18, 2024.

14.    Plaintiff was employed by Defendants in the role of In-Home Registered Nurse ("RN").

15.    In total, Plaintiff worked for Defendants for approximately 16 months.

16.    From a supervisory standpoint, Plaintiff primarily reported to Debra Pronzato ("Pronzato"), a Regional Director of In-Home Services for Defendants. From a Human Resources ("HR") standpoint, Plaintiff interacted with Jacqueline Palmer ("Palmer"), a Senior HR Manager who worked (upon information and belief) remotely from Colorado.

17.    Plaintiff was terminated by Defendants effective on or about July 10, 2025 as discussed *infra*.

18.    Plaintiff has and continues to suffer from various disabilities, including but not limited to chronic eye problems (including, but not limited to, glaucoma and uveitis), anxiety, panic disorder and depression (among other health complications).

19.    Plaintiff's aforesaid health conditions, at times, limit her ability to perform some daily life activities, including but not limited to seeing, working, sleeping, engaging in social interaction and focusing.

20.    Despite her aforesaid health conditions and limitations, Plaintiff was, at all times relevant herein, able to perform the duties of her job well with Defendants; however, she did require reasonable accommodations at times.

21.    Due to her chronic eye problems, Plaintiff previously needed to undergo five (5) eye surgeries. On multiple occasions during September and October of 2024, Plaintiff discussed this with Pronzato, as well as the fact that Plaintiff would need time off to care for and treat her eye conditions including, but not limited to, two (2) additional eye surgeries that she would be

needing. Plaintiff therefore requested the reasonable accommodation of time off to care for and treat her medical conditions.

22.    On multiple occasions prior to Plaintiff's medical leave (discuss further *infra*), Plaintiff shared her health-related matters with Defendants' HR / Management. Plaintiff had been helping Defendants so much that she was proverbially working herself into the ground by doing such extensive overtime on a consistent basis. This exacerbated Plaintiff's health problems.

23.    As such, in or about late October of 2024, a workers' compensation claim was opened due to Plaintiff's complaints of a hostile work environment and the fact that she was suffering physical and mental health problems as a result.

24.    Plaintiff discussed this both verbally and via emails with Defendants' management / HR.

25.    Shortly after Plaintiff's surgery disclosures; a workers' compensation claim being opened; and complaints of physical and mental health problems, Plaintiff was pretextually placed on a performance improvement plan ("PIP), on or about November 15, 2024 (discussed further *infra*).

26.    Between January – March of 2025, on several occasions, Plaintiff shared with Defendants' management that she was undergoing therapy, suffering from mental health issues, and may be seeking a medical leave of absence.

27.    Indeed, Plaintiff commenced a medical leave of absence on or about March 18, 2025. Plaintiff had been "approved" to take "continuous" medical leave under the Family and Medical Leave Act ("FMLA") through June of 2025. Leave under the FMLA for one's own disabilities is also recognized as a medical accommodation under the ADA.

28.     By the second half of June 2025, Plaintiff had tried to resume working with Defendants.

29.     Defendants did not return Plaintiff's calls and Plaintiff was, in essence, being stonewalled about being able to return to work. Plaintiff was also trying to get help with returning to work from Defendants' third-party (Sedgwick), to no avail.

30.     Plaintiff was ultimately terminated on or about July 10, 2025. Within approximately 1-2 days prior to being told of her termination, Palmer informed Plaintiff that she would need to take a call from Pronzato, so Plaintiff should make sure that she was available for her call. Palmer was very nasty in demeanor with Plaintiff (presumably because Plaintiff was viewed as a nuisance merely for trying to return to work from medical leave).

31.     On or about July 10, 2025, Plaintiff was informed by Defendants' management that Plaintiff was terminated for alleged "performance" issues and for "not successfully completing [Plaintiff's] PIP."

32.     Plaintiff tried to ask for more information, but she was only told this generality and conclusively (and abruptly) terminated.

33.     Plaintiff was never permitted to return from her aforesaid medical leave of absence despite many efforts. Then Plaintiff was pretextually terminated for a made-up "performance" and "PIP" rationale.

34.     Plaintiff feels compelled to at least briefly address the false (and pretextual) rationale given to her for her termination. Plaintiff was issued a PIP on or about November 15, 2024. This was **nearly eight (8) months prior to** Plaintiff's termination from employment.

35.     The PIP was only for "30 days" (and one (1) extended period of 30 days). As aforesaid, Plaintiff was working so much overtime to help Defendants, and she was surprised that she would even be issued a PIP.

36.     Moreover, the PIP was not warranted. Due to office disorganization and scheduling problems, there were some errors that were not Plaintiff's fault leading up to the PIP but attributed to Plaintiff.

37.     Pronzato placed in the PIP plan that she would supposedly "meet weekly" with Plaintiff during the PIP to mentor her. There were no such meetings following the first 30 days.

38.     The PIP was not warranted, it was <u>only</u> for 30 days initially (and then an additional 30 days), and Pronzato did not do everything she identified therein (such as meeting weekly during the extended 30 days).

39.     This was consistent with Defendants' poor organization and lack of follow-up institutionally. But none of that is really the issue here. Plaintiff just provides this background for context, as Plaintiff views herself as very conscientious, caring, passionate about her work, and responsible.

40.     What does matter is that Plaintiff completed the PIP (in total, a period of 60 days), and *never once* had any concern or performance matter thereafter brought to her attention relative to the PIP in the next approximately six-plus months prior to her termination from employment. To claim that post-medical leave and post-disability dialogue that Plaintiff did not complete her PIP is absolutely revolting, discriminatory and retaliatory.

41.     Plaintiff was then offered contemporaneous to her termination an unsolicited severance agreement to waive all discrimination and retaliation claims in exchange for compensation. Plaintiff declined by non-acceptance. This is also well-established admissible

evidence of discrimination, retaliation, and pretext – as no policy of Defendants requires that an employee terminated for purported cause or ongoing performance problems be offered a severance package.[2]

42.    Plaintiff believes and therefore avers that she was terminated on account of her: disabilities; requested accommodations; medical leave; workers' compensation claim; record of impairment; health history; or perceptions of her health history; and that Defendants violated the FMLA.

**Count I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination;**
**[2] Failure to Accommodate; and [3] Retaliation)**

43.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44.    Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected her ability to perform some daily life activities, including but not limited seeing, working, sleeping, engaging in social interaction and focusing (among other daily life activities).

45.    Plaintiff requested reasonable accommodations from Defendants including, but not limited to, time off from work / medical leave to care for and treat for her health conditions.

---

[2] *See Staffieri v. Northwestern Human Servs.,* 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013) (an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc*., 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011) (finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.,* 640 F. Supp. 2d 1267 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace,* 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.*, 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

46.     On or about July 10, 2025, Plaintiff was ultimately terminated from her employment with Defendants because of Plaintiff's: (a) known and/or perceived disabilities; (b) record of impairment; and/or (c) requested medical accommodations.

47.     Defendants failed and/or refused to accommodate Plaintiff since they terminated Plaintiff for making the request (for medical leave).

48.     These actions as aforesaid constitute violations of the ADA, as amended.

## Count II
## Violations of the Family and Medical Leave Act ("FMLA")
### (Interference & Retaliation)

49.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.     Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

51.     Plaintiff requested leave from Defendants, her employers, with whom she had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

52.     Plaintiff had at least 1,250 hours of service with the Defendants during her last full year of employment.

53.     Defendants are engaged in an industry affecting commerce and employ, individually and/or collectively, fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

54.     Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis for her own serious health conditions.

55.     Defendants committed interference and retaliation violations of the FMLA by: (a) terminating Plaintiff for requesting and/or exercising her FMLA rights for her own serious health conditions; (b) denying/refusing Plaintiff's requests for FMLA leave; (c) considering Plaintiff's FMLA leave needs, including but not limited to, FMLA-qualifying absences in making the decision to terminate her; (d) terminating Plaintiff to intimidate and/or prevent her from taking FMLA-qualifying leave in the future; and (e) failing or refusing to reinstate Plaintiff at the conclusion of her FMLA leave.

56.     These actions as aforesaid constitute violations of the FMLA.

## Count III
## Violations of Pennsylvania Common Law
### (Wrongful Discharge)

57.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

58.     Plaintiff believes and therefore avers that she was terminated in retaliation for making a workers' compensation report, seeking workers' compensation benefits, and/or filing workers' compensation claims for work-related injuries she sustained while performing work for Defendants. *See e.g. Shick v. Shirey*, 552 Pa. 590, 592 (Pa. Sup. Ct. 1998) (an employee terminated for initiating a worker's compensation claim states a tort-cause of action for common-law wrongful discharge in Pennsylvania).

59.     Defendants' termination of Plaintiff therefore constitutes a violation of this Commonwealth's common law protections.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.      Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded punitive and/or liquidated damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:      _____
Ari R. Karpf, Esq. (Attn. No. 91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801 / akarpf@karpf-law.com

Dated: February 6, 2026

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Yolanda Gaston | : | CIVIL ACTION |
| v. | : | |
| Innovage Pennsylvania Life, LLC, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (x )

| | | |
|---|---|---|
| 2/6/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1.  Does this case involve property included in an earlier numbered suit?                                               Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?              Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same   Yes ☐
    individual?

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?                  Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.   Federal Question Cases:*

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.   Diversity Jurisdiction Cases:*

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify)*:_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases: *(Please specify)*_____
        _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

[ X ]  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

[    ]  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
GASTON, YOLANDA

**(b)** County of Residence of First Listed Plaintiff  Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
INNOVAGE PENNSYLVANIA LIFE, LLC D/B/A INNOVAGE PENNSYLVANIA LIFE, ET AL.

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | **IMMIGRATION** | | |
| | | ☐ 555 Prison Condition | ☐ 462 Naturalization Application | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)
Brief description of cause:
Violations of the ADA, FMLA, PA Common Law, PFPO and the PHRA.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.  DEMAND $  CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*  JUDGE _____  DOCKET NUMBER _____

DATE 2/6/2026  SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____